[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties in this action were married on April 10, 1948 in New Haven. They separated shortly after the marriage and the plaintiff provided half his weekly earnings to the defendant while they lived separately in their parents' homes until May 4, 1955, when their marriage was dissolved. The parties were remarried on April 2, 1956 at New Haven, Connecticut and became the parents of two children: a daughter who died in infancy and a son who has attained majority and graduated from college and continues to live at home with the defendant and her invalid sister.
The court has jurisdiction in that both parties have lived continuously in the state for at least one year immediately prior to the commencement of this action.
The plaintiff seeks a legal separation and equitable relief. In a cross complaint filed without objection on the day of trial, the defendant seeks a dissolution of the marriage and other relief.
The court finds that the marriage has broken down irretrievably with no prospect of reconciliation. In view of the fact that the plaintiff previously was a party to the dissolution of his marriage to the defendant, the court does not find credible his claim that he has moral scruples against dissolution. A decree of dissolution shall enter.
In acting on the parties' requests as to division of property and alimony, the court is guided by the following considerations as set forth in 46b-81 and -82 C.G.S.:
 ". . . the length of the marriage, the causes for the . . . dissolution of the marriage, the CT Page 2977 age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties."
While the court will not set forth all of its analysis of the statutory factors, in order to avoid lack of clarity as to the basis of the court's orders certain aspects of the evidence relied upon must be mentioned. The parties both have strong personalities and definite views. Their married life has been complicated by the fact that the defendant's sister, a stroke victim, has been living with them since 1960. At first, the plaintiff was committed to providing a home for his sister-in-law, however he has since chafed at the loss of privacy while the defendant has remained adamant in her loyalty to her sister, who is now eighty-three years old and bedridden.
In 1986, the plaintiff, who is sixty-nine years old, retired from his employment at the water company and refused to make any further contribution to the household expenses but saved his income from his pension and Social Security checks and used it for travel and vacations on his own. The defendant, who had left her job at the telephone company and become a fulltime homemaker in 1962, a change favored by her husband, went back to work in 1988, two years after the plaintiff stopped supporting the household. She earns a net wage of $82.90 per week from part-time employment as a salesperson at a dress shop. She is seventy years old.
The parties have stipulated that the family home has a value of $195,000.00. While the downpayment (approximately $9,000 of the $19,000 purchase price) came from the proceeds of a house in Branford which the defendant had bought before the parties remarried in 1956, it appears that the balance of the purchase price was paid by the labors of the plaintiff, who worked fulltime at two jobs from 1962 through approximately 1976.
Since 1986, the defendant has paid all the expenses associated with ownership of the home either from her earnings or from contributions made to her by her sister or her son.
The parties have both failed to list some of their assets on their financial affidavits, and the court has relied on testimony elicited at trial as to their further assets. The court finds that the stock valued at $36,366.75 which the defendant testified was a gift from her invalid sister to the parties' son is held in a joint account in the names of the defendant and the son, and the court concludes that half of this asset is in fact the property of the defendant.
While the parties were married, the defendant received free CT Page 2978 medical insurance as a spousal benefit from the plaintiff's retirement benefits. A change in status, whether legal separation or dissolution, will render her ineligible and, in view of the fact that she has arthritis and high blood pressure, will expose her to the need for substitute coverage which she has obtained and which she testified currently costs approximately $1,250.00 per year.
Though the defendant reports that her savings accounts are joint accounts with her son, there was no testimony that the son had contributed to these accounts, and the court has treated them as the assets of the defendant.
The court has not, in considering the appropriate property division, made any assumptions as to what is likely to happen in the future but has made its orders strictly on the current financial circumstances and living arrangements of the parties, except that the court has considered that the plaintiff will stop living in a motel and obtain more permanent housing.
The court orders as follows:
 1. The plaintiff shall convey his interest in the marital residence at 1796 Ridge Road to the defendant upon payment by the defendant of $30,000.00. This determination reflects the fact that for the past four years the plaintiff has appropriated for his own use all of his own income without contributing to the maintenance of the home. It also reflects the distribution necessary to allow both parties to preserve the station in life which they had achieved, as well as the fact that the net weekly income available to the plaintiff, including interest from his liquid assets, will be approximately $460.00, while the defendant's net weekly income, so long as she continues to be able to work and so long as her sister contributes at her present level, will be approximately $355.00, including undisclosed income from investments.
2. Each party shall retain the Individual Retirement Accounts standing in his or her own name.
3. The SNET Credit Union account and all bank accounts identified on her financial affidavit remaining after payment to the plaintiff of the $30,000.00 shall be the property of the defendant. The A. G. Edward Money Market Account and the savings bank accounts identified on his financial affidavit shall be the property of the plaintiff. CT Page 2979
4. The New Haven Water Company Credit Union assets, the Series E Bonds, and the shares of Northeast Utilities stock shall be divided so that each party receives equal value.
5. The household furnishings and other personal property shall be the property of the defendant wife, except that the plaintiff shall remove from the household at a mutually convenient time and retain as his own property his clothing, skiing equipment, personal effects, files and books, a movie camera, projector and films of his parents.
6. The plaintiff and defendant are each awarded one dollar per year alimony.
7. The plaintiff shall continue to maintain his present life insurance with the defendant as the named beneficiary.
8. The 1984 Oldsmobile shall be the property of the defendant. The 1981 Chevrolet shall be the property of the plaintiff. The parties shall take any and all actions necessary to achieve any transfers of ownership and registration of these automobiles.
9. The four cemetery plots shall the property of the defendant and the plaintiff shall transfer his interest to her by November 10, 1990.
10. The parties shall be responsible for their own counsel fees.
BEVERLY J. HODGSON, JUDGE